Good morning, Your Honor. My name is Jack Pelzer. I'm here today representing the Defendant in Appellant, Consolidated World Travel. The issue that is before the Court today is whether the District Court abused its discretion by straying from the rule that parties should finance their own cases and by ordering a crippling $600,000 payment of costs pre-judgment to be paid by the Defendant in this case. The Supreme Court in the Eisen and Oppenheimer cases from the 70s laid out the rule that it is the plaintiff's class that is required to give class notice to the members of the class. And then the Court went on to discuss some of the instances in which the Court may exercise its discretion to modify that. The first being that if the cost or ease of performing a particular task for notice is unequal, then and it's easier for the Defendant or cheaper for the Defendant to perform that task, then the Court can order the Defendant to perform that task. But even under those circumstances, it's the plaintiff who is to bear the expense of the Defendant performing that task. Unless the cost is so insubstantial or so minimal that it simply doesn't warrant the effort to shift the cost back to the plaintiff in order to perform that task. The District Court in this case heard by not considering this test in Oppenheimer and compounded that error when it failed to explain why it ignored the test in its written opinion. The District Court did order the parties to brief the issue of the application of Eisen and Oppenheimer, but then simply failed to address those decisions in his minute entry order that shifted the cost to $600,000. The District Court also invited the parties to give it ideas on how this whole thing should proceed. So my question is, why didn't your clients offer another solution for class notice and particularly maybe a less expensive solution since I definitely understand one of your arguments to be that there's a big price tag associated with what this is how much it costs to do this job. This is the same methodology of identifying potential class members and notifying them that was used for the Illinois class now being expanded to the other 49 states. And so this methodology is really the only and best method, although we frankly contest whether it's an effective one. That's another story for later down the line, but there is no cheaper way of doing it. And so therefore we didn't propose one. So we are where we are because of the nature of the case that the plaintiffs brought that this is this is what it costs to notify the class. The District Court further erred when he ordered this shifting of costs by focusing solely on the partial summary judgment or the likelihood that are prevailing on the merits eventually as being the test for who should bear the expense up front. This is a factor that was not even hinted at in Oppenheimer. Oppenheimer was solely concerned with de minimis costs that could be absorbed by the defendant simply because it wasn't worth the court's or the party's time to shift them to where they belong. And therefore it is just contrary to the letter in spirit of the stare decisis that then Judge Kavanaugh spoke about the Winslow case and really should not be departed from by the district by the lower courts. But what's more, applying this factor is actually contrary to the Supreme Court's decision in Eisen. If the test was the substantial likelihood of prevailing on the merits, then the Eisen result would have been different. Remember, in that case, the District Court conducted an evidentiary hearing on which party was more likely to prevail on the merits and utilize the results of that hearing to decide to allocate 90% of the cost to the defendant. That is the approach that the Supreme Court rejected in the lower courts after Eisen. And therefore this test is actually contrary to the Supreme Court precedent. I'm sorry, why are we talking about likelihood of prevailing on the merits? Because at the juncture at which the District Court here made the decision, there had been a ruling on the merits in terms of the partial summary judgment finding in favor of the plaintiffs. So the plaintiffs had prevailed on the merits in terms of liability. The clients had received the partial summary judgment untested on appeal on the liability issue. There's a great deal more to be done in this case. This case is not all but over. We're not just in the endgame here. There are many other things that a class plaintiff must do in order to prevail on a class action other than simply prevail on the core merits of a claim. And all of those things remain to be addressed by the District Court. And in fact, the entire issue remains to be addressed by this court on appeal. And I think the centerpiece of the appeal on the merits will probably be the one-way intervention issue and whether intervention was properly permitted after the partial summary judgment for the remainder of the nationwide class. And that alone is a very significant issue that this court still needs to address before we can really say that there is a substantial likelihood of prevailing on the merits in this case. The other cases, the lower court cases, as well as the Hunt case, are really all consistent in result with Oppenheimer because the amount of the cost or the size of the class was so small that it really just doesn't warrant shifting back to the plaintiff. The exception to that would be the Sobel case. But in the Sobel case, for all we know from the reported decision, the defendant, Hertz, never even objected to having costs shifted to it. It merely wanted to have the payment of those costs stayed until after the pending appeal on the merits. And so the issue of whether it was proper to assess the $700,000 in costs really was not before the court. And ultimately, the question of the payment of the costs comes down to this court's decision in my reckoned reliable money order. The burden is on adequate class plaintiff's counsel to fund the litigation. That is what they sign up for when they sign on to be representative class counsel and to have the possibility of winning a large fee award at the end. And it is solely that party that is benefited by this giving a notice and expecting this money. And to use the language of the Oppenheimer case, the benefitee of the expense should bear the expense. And that's what we ask this court to do. In addition to that, on the last point, and this is also the last point of Oppenheimer, this decision in effect punishes good advocacy. But for the arguments of the defense in this case, the plaintiff would have trampled the due process rights of the non-Illinois class members by depriving them of notice. It was the advocacy of the defense that prevented that. And the defense should not be penalized for doing that. And that's that was part of the rationale of the Supreme Court in Oppenheimer. We ask that you reverse and remand this case for further proceedings. Thank you, counsel. Mr. Schaumburg. Yes, good morning, your honors. May it please the court. I think the first big issue to address here is the standard of review that this court should apply in looking at the Mr. Pelzer in both his brief and today suggested that there was an error of law that should be reviewed de novo. But the presupposition for that error of law is that the Supreme Court in the Oppenheimer case set out a bright line test that must be applied in each case in order to determine whether shifting the costs of class notice is appropriate. But the Oppenheimer decision specifically did not do that. And in the text of the decision itself, the Supreme Court stated that it did not attempt to catalog all the situations in which a district court may exercise its discretion to shift costs. So there is no Oppenheimer test that the district court failed to apply. The appropriate standard of review here is for an abuse of discretion. And as this court has stated, an abuse of discretion means that no reasonable person could have reached the conclusion that the district court did. I would posit that a reasonable person would reach the conclusion that the district court did because of the specific facts of this case and where we're at. A nationwide class has been certified. The district court entered summary judgment on liability in favor of the plaintiffs and made a factual finding of willful and knowing conduct on the defendant's behalf sufficient to support a troubling of damages under the relevant statute here, the that was an absolutely appropriate exercise of the district court's discretion. And that's particularly true here, where the defendant has represented that should class counsel pay these costs in order to notify the certified class of the rulings that have come down in the class certification that they are not going to pay that money back. So we are going to be forwarding the money for a defendant when they have no intention of paying. Now, the cost is $600,000. That cost is high. Of course, that's a big number. The numbers big because of the defendant's own actions in violating the statute in this case, there would be no class notice cost if they simply hadn't made these illegal robocalls. But even if they chose to do that, if they had kept records of the people that they were calling, it would be much cheaper and much easier to notify the class to identify those people. They didn't. They made the calls indiscriminately, and therefore we have over a million and therefore it's more difficult and more expensive to notify the class. The defendant shouldn't be absolved from that wrongdoing based on the scope of the wrongdoing, with the idea that it would be more appropriate for them to bear the cost if they had committed fewer violations that were narrower. Now, in the Oppenheimer case, that's for a general rule that typically it's class counsel and the plaintiffs who should bear the costs of seeking to maintain the case as a class action. And of course, that makes sense. In Oppenheimer, it was early on in the proceedings. There had been no class certified. As the Supreme Court said in that case, what was before the court there was bare allegations of wrongdoing that had not been proven evidentiarily. And the decision to shift the cost of $16,000 at the time, which would be about $70,000 now, was an abuse of discretion because all you had was allegations. The plaintiffs were seeking to certify a class, and the district court had imposed $70,000 essentially on the defendant to provide some notice to that class. This is a very different situation. The court there was not even considering the possibility that the defendant could be found liable. As Judge Jackson said, it wasn't a likelihood of success on the merits here. It wasn't Eisen. The merits have been decided, and willful and knowing conduct has been found against the defendant as a matter of fact and law. You know, the CWT does make an argument that had the nationwide class been certified from the beginning, it'd be no question that plaintiffs would be responsible for paying these notice costs. We're here just because of this really odd procedural posture. It doesn't seem to come up a lot where the district court did a redo on the class certification. And so now the district court is able in its discretion to shift the notice cost to defendant. Is the fact that a liability finding has been made, is that enough here to really shift what ordinarily would have fallen on plaintiffs? Yes, Judge. I believe it is, and numerous courts have found the same. Once a liability finding has been made, including the Ninth Circuit in Hunt, who approved the shifting of class notices in a similar situation, and district courts that are cited in our brief, I won't recount here. They've all made that decision based solely on the fact that there was a finding of liability against the defendant. And so that absolutely is enough. Now, again, it's important to bear in mind the abuse of discretion standard. Judge Leinenweber below could have taken that fact into account, the procedural posture of this case, and said, you know, in my discretion, I find that it's kind of, you know, an unusual procedural circumstance here, and therefore I'm not going to shift the cost. But that was the district court's discretionary decision, and he found that a finding of liability, and I would posit, you know, particularly because of the willfulness of the actions, determined that it was appropriate to shift those costs here. In terms of the liability finding having been made, I know Mr. Pelzer mentioned the one-way intervention rule. Now, that's not before the court here. That's a separate issue. Mr. Pelzer has suggested that CWT may raise that in the future, but I would say if costs and time are a consideration here, those issues could have been raised in this appeal. Those issues could be before the court right now, but they're not. They're being kicked down the road to a later date, at which point I suppose CWT might plan to appeal that. I would also, I would take issue with the representation that this case is far from over. I think that's based entirely on the hypothetical supposition that CWT will succeed on its appeals on these merits decisions, but that's true in every case. According to that logic, even if judgment had been entered here, the case would be far from over because of the possibility of appeal and a reversal. When we're talking about the issue that's before the court right now, which is simply the decision to shift the costs, that decision was within the district court's discretion and it exercised that discretion appropriately. I think it's really as simple as that. I also take issue with the concept that we were somehow attempting to wink the class or not provide notice to trample on their rights, as I believe it was put in the opening or reply brief. That's not the issue here at all. We intended for notice to go out to the class, of course. The issue was whether notice needed to go out prior to the summary judgment decision being amended in order to apply to a nationwide class. The authority on that point, which is in our brief, there's the Amati decision, which is from this court. There's also the Postow decision from the D.C. Circuit, explains very clearly why we intended to send out one notice to the class that advised them of the class certification and advised them of the summary judgment. It does not violate the one-way intervention rule, which again is a separate issue that's not before the court, but for the sake of argument and perhaps as a preview to this potential appeal that Mr. Calzer has told us about, it was not a violation of the one-way intervention rule under those cases. So we absolutely, of course, we want to tell the class that we have had a successful ruling and we certified a class and we've been doing great for them in the case. It's not a matter of us attempting to somehow not provide notice to the class. It's a matter of CWT attempting to require two rounds of notice in order to delay the case further, which has been, this case has been ongoing since 2015. This is an old case. We absolutely are near the end. We have summary judgment on liability. We have a certified nationwide class. So the possibility that an appeal could happen and maybe it would be reversed doesn't mean that there's a long road to hoe here. And again, CWT has been very clear saying that this ruling is difficult for them and it may impact their ability to pursue other avenues, have money to do other things, but they shouldn't have made these calls, frankly, because they shouldn't have engaged in this widespread conduct that led to the costs being what they are in this case. And to the extent that they did and that bet was made, it's one that they need to lie in now. There's a question here that was handed me actually to ask is do have to pay all class costs? No, Judge, they only have to automatically pay damages, of course, if they're found liable. This class notice cost, for example, at issue here is a discretionary determination that was to be made by the district judge as Judge Liner-Rupert did it. Anything further, Judge Mann? No, I don't. Mr. Schomburg, anything further from you? No, Your Honor, and I think I'm out of time, so I will stop now. Okay, Mr. Kelser, you may conclude. Thank you, Your Honor. Briefly on the standard of review and jurisdiction issues, the standard of review is abuse of discretion, and committing an error of law constitutes an abuse of discretion. That's why we phrased it that way. On whether we could have brought the merits issues up in this appeal, the only reason we're here is because we fit within the collateral order exception, and we're raising issues that are wholly unrelated to the merits. It would have been improper for us to delve into the merits here, and it's incorrect to say that those issues could have been raised here. On the factual point of why the costs are so high, the reason the costs are high is that it was a third-party caller who actually placed these calls, not my client, and that third-party caller failed to maintain records, and that's why we have to go through this reverse methodology that the plaintiffs have come up with that we challenge, but which nevertheless costs the $600,000. Counsel emphasizes the bare allegation language from Oppenheimer, but really ignores Eisen. In Eisen, there was much more than a mere bare allegation. There was actually a preliminary finding based on an evidentiary hearing of a substantial likelihood, and that just cannot be squared with Hunt, and for those reasons, we do ask this court to reverse and remand for further consideration. Thank you. Thank you both, counsel, and the case will be taken under advisement, and that concludes the oral argument for this morning.